***NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., | Civil Action No. 12-2132 (FLW) |
| Plaintiff, | |
| v. | **SUPPLEMENTAL OPINION** |
| JANSSEN PHARMACEUTICALS, INC., *et al.,* | |
| Defendants. | |

**WOLFSON, District Judge**:

This Opinion serves to memorialize and supplement the Court's decision on the record resolving the joint motion to dismiss filed by defendants, Alert Marketing, Inc., Janssen Pharmaceuticals, Inc. and Ortho-McNeil Pharmaceuticals, LLC (collectively, "Defendants"). In the instant putative class action suit, Plaintiff Physicians Healthsource, Inc. (hereafter, "Plaintiff") alleges that Defendants violated the Telephone Consumer Protection Act (the "TCPA") by faxing two unsolicited advertisements to one of its physicians at the office of Physician Healthsource. Defendants move to dismiss Plaintiff's Complaint on the basis that the faxes are informational as a matter of law and therefore, exempted from the Act. For the reasons I stated on the record on January 31, 2013, and for those set forth below, I find that the faxes are indeed informational and that they include only an incidental amount of commercial material. As such, as a matter of law, those faxes are not actionable under the TCPA.

**BACKGROUND**

The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, prohibits individuals from sending unsolicited commercial advertisements via telephone or a telephone facsimile machine (hereafter "fax") to other individuals. *See* 47 U.S.C. §227. Based on this prohibition, Plaintiff alleges that Defendants violated the TCPA when they sent two identical unsolicited faxes to one of its offices, concerning the reclassification of Levaquin for insurance purposes. Compl., ¶ 2. In that connection, Plaintiff seeks to represent a nation-wide class of any person who received similar faxes from Defendants. *See* Compl., ¶ 20.

Because on a motion to dismiss the Court can consider Plaintiff's pleadings, as well as any document to which it refers in the Complaint, the Court shall examine the faxes at issue in this case. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). The fax is entitled "Important Reimbursement Information" on the top of the page. The main body of the fax includes the name of the drug, Levaquin, and the fact that it is now "Available on UnitedHealthcare PDL Tier 2." As further indicated in small print on the bottom of the fax, Levaquin changed from being labeled as a Tier 3 drug to a Tier 2 drug; consequently, it is now available for a lower copayment. For further information, the recipient of the fax is asked to contact a consumer communications center and that full prescribing information is available from a representative. Finally, at the margins of the fax, it states that the fax was "Sent on behalf of Ortho-McNeil-Janssen Pharmaceuticals, Inc." It also contains Defendants' marketing logos

and an opt-out clause indicating how a recipient can have its fax number removed from the list of recipients.[1]

On January 31, 2013, the Court held oral argument on Defendants' motion to dismiss and made certain findings on the record and stated that it was not including formal legal citations in that oral opinion. I now exercise my discretion to supplement my decision, with the appropriate references to case law, in this written Opinion.

## DISCUSSION

### I. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

---

[1] In support of their position, Defendants cite to a number of articles regarding, *inter alia*, the impact of lower copayments on patient behavior. However, on a motion to dismiss, the Court cannot consider any information outside of the allegations in the complaint, exhibits attached to the complaint and any document that form the basis of Plaintiff's claim. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). Therefore, academic articles will not be considered on this motion.

1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (citations and quotations omitted).

## II.   TCPA

Under the TCPA, an unsolicited advertisement is any material advertising the commercial availability or quality of any property, goods, or service which is transmitted to a person without that person's express invitation or permission, in writing or otherwise. 47 U.S.C. § 227(a)(5). Importantly, Congress intended that non-commercial faxes fall outside the TCPA's prohibition. *See Holmes v. Back Doctors, Ltd.*, 2009 WL 3425961, *1, *4 (S.D. Ill. Oct. 21, 2009); *see also*

4

*Destination Ventures, Ltd. v. FCC*, 46 F. 3d 54, 56 (9th Cir. 1995); *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009).  Indeed, it would be unconstitutional for the TCPA to impose a blanket prohibition on all fax communications between businesses.  *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980).  As such, the statute draws a line between informational messages and advertisements.  *See* 47 U.S.C. § 151; 47 C.F.R. § 64.1200; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005 ("FCC Rules and Regulations"), 71 Fed. Reg. *25, 972-73 (May 3, 2006).

Because the TCPA is silent on the meaning of "advertisement," the FCC has provided examples as to what constitutes an unsolicited advertisement in its Regulations.  *See FCC Rules and Regulations* at *25,972-73; *N.B. Indus. v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 126432, at *1, *14 (N.D. Cal. Nov. 30, 2010).  Additionally, the FCC has clarified that four types of messages do not fall under the purview of the TCPA: (1) informational messages; (2) transactional messages; (3) non-commercial messages from non-profit organizations; and (4) non-advertisement messages with an incidental amount of advertising.  *See Id.*

As a preliminary issue, while neither party raise this issue, I must consider whether the FCC's interpretations should be accorded any weight.[2]  Under *Chevron*, the FCC's examples and interpretation of the TCPA would be accorded substantial deference if the statute is facially ambiguous.  *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984).  When Congress delegates authority to an agency to elucidate an ambiguous statute by regulation, the agency's regulation is entitled to controlling weight unless it is capricious, arbitrary, or manifestly contrary to the statute.  *Chevron*, 467 U.S. at 843-44.  The interpretations from the agency are considered

---

[2] Indeed, both parties rely on the FCC's directives in their papers.

correct unless clearly erroneous or inconsistent with the statute. *See Coeur Alaska, Inc. v. SE Alaska Conservation Council*, 129 U.S. 174, 193 (2009). The same level of deference is applied to examples published contemporaneously with the final regulations as a direct response to concerns voiced during a "notice and comment" period following a proposed rule. *See N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *14.

In contrast, regulations interpreting unambiguous statutes are not entitled to substantial deference. *Chevron*, 467 U.S. at 843-44. As such, interpretations that simply mirror the statute and do not clarify any ambiguity are not entitled to controlling weight. *See N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *14. Nevertheless, courts are still entitled to accord some weight to these interpretations because the guidelines constitute a body of experience and informed judgment which provides guidance for the judiciary. *C.f. Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Thus, even if the plain meaning is not difficult to apply, courts still may consider the interpretations of an agency. *See N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *14 (applying FCC examples of advertisements to a TCPA claim).

Here, while the Court does not find that the FCC's interpretations of the TCPA should be afforded substantial deference -- because the statute is not facially ambiguous -- those interpretations are clearly persuasive. Indeed, the plain meaning of "advertisement" -- which is expressly defined by the statute as "any material advertising the commercial availability or quality of any property, goods, or services" -- is not difficult to apply. *See* 47 U.S.C. § 227(a)(5); *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *13. Furthermore, the FCC's interpretation of an "unsolicited advertisement" mirrors the statute and does not clarify any ambiguity. *See* 47 C.F.R. § 64.1200(f)(13); *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *13. Thus, under *Chevron*, it does not appear that the FCC's interpretation is entitled to substantial

deference. However, the FCC's examples of what constitutes an advertisement do provide some guidance on how courts should apply the statutory definition of "advertisement." *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *13. In that connection, the examples are helpful and persuasive given that these interpretations and examples are based on the FCC's experience and informed judgment. Hence, the Court will consider the FCC's interpretations in determining whether the faxes here are advertisements.

    A.    **Whether the Faxes are Advertisements**

Under the TCPA, messages that promote the commercial availability or quality of a good or service are advertisements. 47 U.S.C. § 227(a)(5); *see Green v. Anthony Clark Int'l Ins. Brokers Ltd.*, 2009 WL 2515594, *1, *6-*7 (N.D. Ill. Aug. 17, 2009) (fax promoting the defendant's service by providing examples of past services and encouraging recipients to utilize its service is an advertisement). Even if the message is free but promotes the commercial availability or quality of a good, the message is an advertisement. FCC Rules and Regulations at *25,972-73; *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *17; *see Peter Strojnik, P.C. v. Signalife Inc.*, 2009 WL 1137751 (D. Ariz. Mar. 9, 2009) (finding statements like "Read the news on this stock now!!Right Now!/What would you do with all those juicy profits" indicated the message was commercial); *Sandowski v. OCO Biomedical, Inc.*, 2008 WL 5082992, *1-*2 (N.D. Ill. Nov. 25, 2008) (finding a fax containing statements promoting the quality of a service was an advertisement). Under the case law, in order to state a claim under the TCPA, there must be allegations that the language or statements in a fax promote the quality or availability of goods or services.

7

On the other hand, statements which do not promote the commercial availability or quality of a good or service are informational messages exempted from the TCPA.[3] *See* 47 U.S.C. § 227(a)(5); FCC Rules and Regulations at *25,972-73.; *N.B. Indus.*, 4939970 at *17. Examples of informational messages include: industry news articles, legislative updates, and employee benefit information that do not promote the commercial availability or quality of a good or service. FCC Rules and Regulations at *25,972-73; *see, e.g., Holmes v. Back Doctors Ltd.*, 2009 WL 3425961, *1 (S.D. Ill. Oct. 21, 2009) (finding regularly distributed news letters to a target audience for educational purposes not an advertisement). Likewise, notifications concerning the existence of an opportunity are informational messages not prohibited by the TCPA. *See N.B. Industries*, 2010 U.S. Dist. LEXIS 126432 at *21-*22 (fax notifying the recipient of an upcoming award ceremony and asking for applications is not an advertisement); *see also Phillips Randolph Ent., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (finding a fax notifying the recipient of a new research study on a health care program was not an advertisement); *Ameriguard, Inc. v. University of Kansas Medical Center*, 2006 WL 1766812 (W.D. Mo. June 23, 2006) (same); *Lutz Appellate Serv., Inc.*

---

[3] The parties disagree as to the nature of the TCPA; Plaintiff argues that because the TCPA is remedial in nature, the provisions should be broadly construed. On the other hand, Defendants argue that the TCPA is punitive in nature, and therefore, it should be interpreted narrowly. Neither party cites to any authority that has squarely addressed this issue. The Court's own independent research has revealed that there is conflicting case law on this question. For one, the court in *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga 2003), in determining that the TCPA is remedial in nature, found that the TCPA's purpose "is to redress harms to individuals who are forced to absorb the costs associated with receiving unsolicited faxes." *Id.* On other hand, in *US Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005), the court there found that because the TCPA was enacted to address and deter public harm caused by sending unsolicited faxes, the statute is penal in nature. *Id.* Cases subsequent to those decisions have varied in their approach and, thus, there is no general consensus amongst the districts as to the nature of TCPA. While I recognize this apparent split in authorities, I need not address this dispute because I find that the faxes here are clearly exempted from the TCPA.

*v. Curr*y, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (fax announcing the existence of job openings was not an advertisement for a property, good, or service).

Furthermore, whether the sender will ultimately obtain an ancillary commercial benefit from sending an informational message does not alter this classification. *Lutz Appellate Serv., Inc.*, 859 F. Supp. at 181 (finding that the fact that a recipient may apply for the job offered did not alter the informational nature of the fax). Indeed, the potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement. The appropriate inquiry under the TCPA is not whether there is some ancillary commercial benefit to either party, but whether the message is an advertisement which tends to propose a commercial transaction. *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *10; *see, e.g., Sadowski v. Med1 Online, LLC*, 2008 WL 489360, *7 n. 5 (N. D. Ill. Feb. 20, 2008) (finding that the potential economic benefit in combination with commercial content, such as language geared towards acquiring new customers, determine whether the fax may be an advertisement).

In the case at hand, I find that the faxes are not advertisements. First and foremost, the faxes do not advertise either the commercial availability or the quality of Levaquin; rather, they simply notify the recipient of Levaquin's reclassification and provide the recipient with up-to-date information. Moreover, while the faxes contain the phrase "Available on," such a phrase does not suggest that the fax is advertising the commercial availability of Levaquin. Rather, they only refer to the fact that Levaquin has now been reclassified, not where or how it is available for purchase. In short, there are no statements included in the content of the fax that promote either the availability or the quality of Levaquin.

Furthermore, I reject Plaintiff's position that the Court should inquire as to whether Defendants would obtain an ancillary commercial benefit as a result of sending the fax. As iterated above, the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits. Moreover, the link between Defendants receiving any commercial benefit from sending this type of information to prescribing doctors is too tenuous for the Court to speculate.

Next, I find unpersuasive Plaintiff's argument that the use of Defendants' name and marketing logos is sufficient to transform the fax into an advertisement. First, the TCPA expressly requires that the sender's name appear on the fax when sending any informational messages. *See* 47 U.S.C. § 227(d)(1)(B). As such, a reference to a commercial entity does not by itself make a message commercial in nature. FCC Rules and Regulations, at *25,973. Here, to meet the requirements of the TCPA, Defendants' names were included to identify the senders of the fax. And, more importantly, the names are moderately sized and appear only at the margins of the fax, unconnected to the word Levaquin. As such, the Court finds that Defendants' usage of their company names is not connected to any advertising purposes, nor were they proposing a commercial transaction.

Next, the inclusion of marketing logos also does not transform the faxes into advertisements. Indeed, as a general matter, an incidental advertisement of the sender's goods or services does not convert the entire communication into an advertisement. *See, e.g., N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *28-30 (finding use of modestly sized logos on a fax did not transform the fax into an advertisement). However, if the amount of advertising material is significant, it may serve to undermine the informational purpose of the message. *See generally*,

FCC Rules and Regulations, at *25,973. As such, the Court must determine whether the amount here is only incidental to the fax's informational purpose.

Regulations from the FCC suggest factors to consider in determining whether the amount of advertising is incidental to a primary informational purpose. Those factors include: whether the information is issued on a regular schedule, whether the text of the communication changes from issue to issue, whether the communication is targeted at specific regular recipients (i.e. paid subscribers or regular recipients who initiated membership in the organization that sends the communication). FCC Rules and Regulations, at *25,973. Other factors include the amount of space spent on advertising versus the amount of space devoted to the informational message, whether the advertising is on behalf of the sender of the information or sold to entities other than the sender. *Id.; see Holmes*, 2009 WL 3425961 at *4 (finding faxes that were of interest to the recipient and informational but contained some commercial material were not advertisements).

Applying the relevant factors, while there is no allegation in the Complaint setting forth the selection criteria as to whom the faxes were sent, the faxes were clearly only useful to physicians who were prescribing Levaquin to patients on UnitedHealthcare PDL. And, there is no allegation, or even suggestion, in the Complaint that physicians in Plaintiff's facility are not prescribing Levaquin or that their patients are not part of UnitedHealthcare. A lack of allegations in this regard is fatal to Plaintiff's argument that Defendants had an improper motive in sending these informational faxes, i.e., the faxes are advertisements in disguise. Even more compelling, the marketing logos appear only at the bottom margin in small print and away from the name Levaquin, while, quite noticeably, the informational statements of the faxes use most of the space. Certainly, this type of sizing and spacing strongly supports a finding that there is only an incidental connection between the informational messages contained in the faxes and the

11

purported commercial material suggested by Plaintiff.  Thus, the inclusion of the logos in the faxes does not undermine the informational purpose of the message.

Additionally, the presence of the contact information does not alter this analysis. Plaintiff argues that the contact information transforms this otherwise informational fax into an advertisement because it promotes Defendants' product, Levaquin.  Under the FCC's guidance, my inquiry here is whether the inclusion of this information is incidental.  I find that it is.  The contact information is included for the purpose of obtaining additional information on Levaquin. From the face of the fax, the recipients are directed to use the number only to obtain additional prescribing information – which is presumably necessary because drugs are highly regulated products -- not for any commercial or marketing purposes.  More tellingly, the information is in small font at the bottom of the fax, placed away from the fax's main content.  *See, e.g.*, *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *28-*30 (finding that a fax is not an advertisement when it directs the recipient to the website of the sender for more information); *Stern v. Bluestone*, 12 N.Y. 3d 873, 875-76 (2009) (holding that contact information is merely incidental marketing information which does not transform an informational fax into an advertising); Ameriguard, 2006 WL 1766812 at *1-*2 (inclusion of contact information directing a recipient to more information related to a research study is found to be mere incidental marketing material); *Lutz*, 859 F. Supp. at 181-82.  Accordingly, the Court finds that the contact information placed on the fax in this case is only incidental to the informational message of the fax and does not convert it into an advertisement.

**B. Pretext**

Plaintiff further argues that the faxes were sent as a pretext to market Levaquin; however, I find nothing on the face of the faxes which would suggest the presence of a commercial pretext. Indeed, I do recognize that in some situations, publications may be part of an overall marketing campaign to promote the commercial availability and quality of a sender's goods or services, such as free seminars, free magazine subscriptions, surveys, catalogues, and consultations.  FCC Rules and Regulations, at *25,973; *N.B. Indus.*, 2010 U.S. Dist. LEXIS 126432 at *17.  In these examples, while the message is informational to the extent that it is notifying the recipient of free events or services, the message can also be construed as advertisement because it contains statements promoting the availability and quality of certain goods or services.  *See Sandowski v. OCO Biomedical, Inc.*, 2008 WL 5082992, *1, *2 (N.D. Ill. July 23, 2008) (holding fax advertising a training seminar and containing statements about its quality was an advertisement); *Sadowski v. Med1 Online, LLC.*, 2008 WL 489360 at *7 n. 5; (finding the language of the fax was geared toward obtaining new customers and thus may have a commercial pretext); *compare Phillip Long Dang, D.C. v. XLHeath Corp.*, 2011 WL 553826, *1, *4 (N.D. Ga. Feb. 7, 2011) (finding that because the message lacked any commercial statement regarding a particular product or service, a commercial pretext does not exist); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (same).

In the case at hand, the Court finds that on its face, the content of the fax at issue does not suggest the presence of a commercial pretext.  Indeed, Defendants did not offer any free services or goods to Plaintiff's doctors.  Rather, as I have explained, the fax only serves as a notification of updated information about Levaquin's insurance tier rating, and lacks any statement promoting either the commercial availability or quality of Levaquin.  Plaintiff relies on three cases which do not support its position here.  First, in *Stonecrafters, Inc. v. Almo Distributing*

*New York, Inc.*, No. 07-5105 (N.D. Ill. 2008), the court there specifically found that while the facsimile sent by defendant appliance company had no express language promoting or marketing a particular product, the purpose of a free seminar regarding certain appliances seems "to promote the quality of those products at the training session." *Id.*, p. 2.  In comparison, in this case, doctors were not invited to any free informational sessions.  Instead, the information regarding Levaquin only communicated certain insurance classification.  This does not directly or indirectly promote the availability or the quality of the drug.

For the same reasons, I do not find *Gibson v. Jackson National Life Ins. Co.*, No. 06-5342 (C.D. Cal. 2006), persuasive.  In that case, the court, similar to *Stonecrafters*, found that the offer of free seminars on insurance products to insurance brokers is an indirect marketing campaign to create good will amongst these agents.  Again, the doctors, here, were not offered any free training which could be construed as a marketing campaign on the part of Defendant.  There is nothing on the faxes themselves to suggest that Defendant sent them to doctors in order to create any good will.

Finally, Plaintiff mistakenly relies on the New York state court case of *Rudgayer & Grant v. Enine, Inc.*, 799 N.Y.S.2d 882, 885-86 (N.Y. App. Term 2004), for the proposition that faxes which include a defendant's company and contact information should be considered as an unsolicited advertisement within the meaning of the TCPA.  This case predates the 2006 FCC Final Rules, and cases subsequent to the Rules have found that a reference to a commercial entity does not alone make a message commercial in nature.  Rather, as I have set forth previously, I look to the overall content of the fax to ascertain whether the fax can be construed as advertisement.  Given that the faxes in this case lack any commercial statement regarding Levaquin, they cannot be considered as advertisements under the TCPA.

Accordingly, for the foregoing reasons and for the reasons stated on the record, the Court dismisses Plaintiff's Complaint brought under the TCPA for failure to state a claim.

DATE:  February 6, 2013                               /s/     Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.