**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, Inc., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> JANSSEN PHARMACEUTICALS, INC., ALERT MARKETING, INC., ORTHO-MCNEIL PHARMACEUTICAL, LLC., ORTHO-MCNEIL, INC., <br><br> Defendants. | Civ. No 12-2132 (FLW-TJB) <br> OPINION |

**WOLFSON, U.S. DISTRICT JUDGE:**

Presently before the Court is a motion for summary judgment filed by Defendants Janssen Pharmaceuticals, Inc., Alert Marketing, Inc., Ortho-McNeil Pharmaceutical, LLC. ("Janssen"),[1] and Ortho-McNeil, Inc. (collectively, "Defendants"). Defendants seek summary judgment on the amended putative class action complaint ("Amended Complaint") filed by Plaintiff Physicians Healthsource, Inc. ("Plaintiff"), which alleges that two faxes sent by Defendants in the spring of 2008 violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

For the following reasons, Defendants' motion is denied.

---

[1] Plaintiff filed this action against Ortho-McNeil Pharmaceutical, Inc. Defendants' briefs and exhibits provide potentially conflicting information about whether Plaintiff correctly identified the entity. Defendants state in their moving brief that Ortho-McNeil Pharmaceutical LLC was misidentified as Ortho-McNeil-Pharmaceutical, Inc. Defs.' Br. n.1. However, one of the certifications submitted in support of Defendants' motion states that Ortho-McNeil-Janssen Pharmaceuticals, Inc. is now known as Janssen Pharmaceuticals, Inc. Owen Certif. 1 n.1.

## I.       Background and Procedural History

The following facts are undisputed unless otherwise indicated. In the spring of 2008, two faxes ("the Faxes") were sent to Dr. Jose Martinez on behalf of Ortho-McNeil-Janssen Pharmaceuticals.[2] The content of the two faxes is identical. *See* Attachments A, B; *see also* Dkt. 4. The Faxes state at the top left margin that they were "[s]ent on behalf of Ortho-McNeil-Janssen Pharmaceuticals" and indicate that they contain "Important Reimbursement Information" about a pharmaceutical drug named Levaquin.[3] Specifically, the Faxes go on to state that the drug is "Available on UnitedHealthcare PDL [prescription drug list] Tier 2." *See* Attachments A, B; *see also* Dkt. 4. Towards the bottom of the fax, in smaller font, it is explained that Tier 2 drugs are "[b]rand name drugs that are generally covered at lower copayments than Tier 3 brand name drugs." *See* Attachments A, B; *see also* Dkt. 4. It is further explained in parentheses that "Tier 1 drugs are generally generic drugs and have the lowest copayments." *See* Attachments A, B; *see also* Dkt. 4. Further down, in even smaller font, the text reads:

> If you do not wish to receive any more faxes from /alert Marketing Inc., please call 866-838-2914 (toll free) and enter your fax number followed by the # sign, or return this fax to 866-791-6049 and write clearly on the fax, "Please remove this fax number" AND the fax number you wish to have removed, or visit http://xmsconnect.us/removemyfax/ and your fax number will be placed on our "Do Not Fax" List. Failure to comply with your request within 30 days is unlawful.

*See* Attachments A, B; *see also* Dkt. 4.

The faxes were sent by Defendant Janssen's marketing department to physicians' fax machines in the following regions: New York City; Southern FL; New Jersey; Texas; Northern FL; Georgia; Chesapeake; Rocky Mountain; Ohio; Missouri; North Carolina; New England. Pl.'s

---

[2] The faxes are attached to this opinion as Attachmnents A and B.

[3] "Levaquin is an anti-infective medication in a therapeutic class known as quinolone antibiotics." Defs.' Stmt. of Facts ¶1; *see also* Owen Certif. ¶ 2. Defendant Janssen has the rights to sell Levaquin in the United States. Pl.'s Opp. Br. at 5.

Stmt. of Facts ¶¶ 16, 20. Those regions corresponded to the regions Defendant Janssen's marketing department was targeting in 2008 in its bid to increase Levaquin's market share. *See* Pl.'s Stmt. of Facts ¶ 21. Further, it is undisputed that there were no UnitedHealthcare commercial line changes to UnitedHealthcare's Levaquin tier changes from 2007 to 2008. However, there were Levaquin tier changes, from Tier 3 to Tier 2, in 6 of 50 UnitedHealthcare Medicare lines between 2007 and 2008, resulting in virtually all UnitedHealthcare Medicare enrollees having access to Levaquin at Tier 2. Pl.'s Stmt. of Facts ¶¶ 56–57; Matckie Certif. ¶¶ 12–14.

On April 5, 2012, Plaintiffs filed this lawsuit, alleging that the two faxes in question constituted unsolicited advertising in violation of the TCPA. On January 31, 2013, this Court granted Defendants' motion to dismiss and, thereafter, supplemented its opinion on the motion.

Plaintiff filed a motion for reconsideration and a motion to amend. I denied Plaintiff's motion for reconsideration. *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2013 WL 2460345, at *3 (D.N.J. June 6, 2013). Regarding Plaintiff's motion to amend, I noted that Plaintiff alleged in its moving brief that "Levaquin was actually reclassified in 2004, and since the drug was already a Tier 2 drug in 2008, there was no 'reclassification,' 'up-to-date,' or 'breaking news' reimbursement information and thus, the fax could not be considered truly informational . . . . [A]n assumption underlying my previous Opinion was that a reclassification had occurred and that new information was being shared with prescribing physicians. That may not be accurate." *Id.* at *4. I also noted that "Plaintiff's assertions regarding the timing of the tier change for Levaquin raise an issue which was not before me on Defendants' joint motion to dismiss: whether the context in which the defendants sent the fax—taking into consideration, *inter alia*, the manner in which it was sent, the timing of the fax, as well as the recipient and the sender of the fax—would alter the seemingly informational message of the fax." *Id.* at *4 n.4. However,

because Plaintiff did not plead this allegation in the form of a proposed amended complaint, but rather argued as such in its moving brief, I cautioned that "I am making no finding as to whether such additional allegations could state a claim, and I will not address them at this time because they do not appear in the Proposed Amended Complaint. It would not be appropriate for this Court to render an advisory ruling on a non-existent pleading." *Id.* I then granted Plaintiff's motion to amend, though not in the form of the proposed amended complaint. *Id.* at *5.

On June 26, 2013, Plaintiff filed an Amended Complaint. In its Amended Complaint, Plaintiff added eight new allegations, which boil down to the following factual assertions (1) Plaintiff did not have a business relationship with Defendants; (2) Levaquin had the same Tier reimbursement rating from at least 2004 to the time the faxes were sent and, thus, the faxes provided stale information; (3) "[a]ny insurance reimbursement information was not directly relevant to any fax receipients." Am. Compl. ¶¶ 17–25. On December 18, 2014, Defendants moved for summary judgment on Plaintiff's Amended Complaint. On April 2, 2014, the Court denied Defendant's motion without prejudice as premature, finding that Plaintiff did not have an adequate opportunity to take discovery.

After the parties engaged in discovery, Defendants renewed their motion for summary judgment. Defendants argue that (1) the faxes are clearly informational because there is no need for a fax to contain "breaking news" to be informational and because the Faxes contained important information, (2) the faxes were issued because UnitedHealthcare renewed Levaquin's tier status on its commercial formulary in early 2008, and (3) the faxes are informational even under a standard requiring a tier change in the drug to qualify as informational because significant changes were made in Levaquin's tier status on several UnitedHealthcare group plans in early 2008.

**II.     Standard of Review**

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* FED R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Brooks v. Kyler,* 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing FED R. CIV. P. 56(c)). The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir. 1996).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* FED R. CIV. P. 56(e); *Anderson,* 477 U.S. at 249. In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks,* 204 F.3d at 105 n.5 (citing *Anderson,* 477 U.S. at 249).

## III.   Analysis

### a.   *The Court's Holdings in its Opinion on Defendants' Motions to Dismiss*

I explained the TCPA's provisions banning unsolicited advertisements and the distinction drawn in that statute between informational messages and advertisements in my opinion on Defendants' motion to dismiss, and need not repeat myself at length here. *See Physicians*

5

*Healthsource*, 2013 WL 486207, at *2–3. The TCPA defines an advertisement as "any material advertising the commercial availability or quality of any property, goods, or services," and the Federal Communications Commission ("FCC") has provided persuasive examples of advertisements in its regulations. *See* FCC Rules and Regulations at *25, 972–73.

In my opinion on Defendants' motion to dismiss, I found as a matter of law, that looking at the contents of the Faxes alone,

> the faxes are not advertisements. First and foremost, the faxes do not advertise either the commercial availability or the quality of Levaquin; rather, they simply notify the recipient of Levaquin's reclassification and provide the recipient with up-to-date information. Moreover, while the faxes contain the phrase "Available on," such a phrase does not suggest that the fax is advertising the commercial availability of Levaquin . . . . Furthermore, I reject Plaintiff's position that the Court should inquire as to whether Defendants would obtain an ancillary commercial benefit as a result of sending the fax . . . . Next, I find unpersuasive Plaintiff's argument that the use of Defendants' name and marketing logos is sufficient to transform the fax into an advertisement . . . . Next, the inclusion of marketing logos also does not transform the faxes into advertisements . . . .

*Physicians Healthsource*, 2013 WL 486207, at *5. Further, applying regulations from the FCC suggesting factors to consider in determining whether the amount of advertising is incidental to a primary informational purpose, I found "that the contact information placed on the fax in this case is only incidental to the informational message of the fax and does not convert it into an advertisement." *Id.* at *6. Finally, I found that "on its face, the content of the fax at issue does not suggest the presence of a commercial pretext." *Id.*

At the outset, I note that I will not revisit my analysis in my earlier opinion regarding the content of the Faxes. However, to the extent that Plaintiff provides evidence and arguments that the timing and the relevance[4] of the transmittals support a finding that the Faxes constitute

[4] Regarding Plaintiff's additional factual assertion in its Amended Complaint that Plaintiff and Defendants lacked a business relationship, "it is clear that this Court's prior holding that the fax is not an advertisement is not relevant to a finding of a prior business relationship, and as a result,

advertising due to the context of the transmittals—as opposed to their contents—I will consider such evidence and arguments on this summary judgment motion.

I also note as a threshold matter that the jurisprudence regarding whether a Court should indeed look beyond the four corners of a fax's contents and examine other potentially relevant facts in its determination as to whether a particular fax indeed constitutes an advertisement is still developing and the Third Circuit has yet to decide the issue. However, recent court decisions discussing the issue have come out against putting on "evidentiary blinders in deciding whether a particular fax amounts to an advertisement." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015); *see also, e.g.*, *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, No. 1:14-CV-00701 (APM), 2015 WL 2404695, at *4 (D.D.C. May 11, 2015) (examining both the timing and the content of an advertisement in denying a motion to dismiss a TCPA junk fax claim). The Court finds this reasoning persuasive, particularly in light of the FCC's reasoning in classifying faxes that notify recipients of free goods and services as advertising, in part because "free" publications are usually part of an overall marketing campaign, a fact that is not necessarily evident from the four corners of a fax itself. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3814 (2006) ("[F]acsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, 'free' seminars serve as a pretext to advertise commercial products and services. Similarly, 'free' publications are often part of an overall marketing campaign to sell property, goods, or services.").

---

amending the Complaint to include such allegations would not change the result." *Physicians Healthsource,* 2013 WL 2460345, at *4.

I find it useful, within the spirit of the TCPA, and sufficiently supported by the case law to consider factors beyond the scope of a fax's contents in discerning whether there is an advertising intent behind the transmittal of a fax such that would classify the fax as "unsolicited advertising" under the TCPA.[5] As such, the Court will examine the merits of Plaintiff's arguments that the circumstances surrounding the transmittal of the Faxes may transform the Faxes into advertising as defined under the TCPA.

Such an examination reveals the following genuine issues of disputed fact that preclude summary judgment in favor of Defendants.

> b.  The Timing of the Faxes

First, the Court finds that because the timing of a fax can affect whether the fax amounts to an advertisement, the parties' arguments with respect to the Faxes' timing is relevant to Defendants' summary judgment motion. *Cf. Drug Reform Coordination Network, Inc.*, 2015 WL 2404695, at *4. Here, there is a genuine isse of disputed fact about whether the timing of the Faxes indicates that the Faxes were not informational because they contained no new information.

---

[5] Plaintiff also provides citations to various older cases that have, in some form or another, gone beyond the four corners of a fax in discerning whether the fax is an unsolicited advertisement under the TCPA: *See Stonecrafters, Inc. v. Almo Distributing New York, Inc.*, No. 07 C 5105 (N.D. Ill. July 23, 2008) (While the facsimile sent by defendant appliance company had no express language promoting or marketing a particular product, the purpose of a free seminar regarding certain appliances seems "to promote the quality of those products at the training session."); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat'l Life Ins. Co.*, No. CV 06-5342 DSF (C.D. Cal. Oct. 30, 2006) (drawing inferences about the defendant's advertising intent due to the defendant's status as an insurance company); *Rudgayzer & Gratt v. Enine, Inc.*, 2004 WL 877852, at *8 (N.Y. App. Apr. 14, 2004) ("[W]e do not limit our scrutiny to the four corners of the fax. Rather, such factors as who the sender is, as well as his motives, purposes, and intentions for sending the fax, are all relevant."); *Schumacher Fin. Svcs., Inc. v. Steckelberg*, No.: 03 AC-8706 Y CV (Mo. Cir. Ct., Oct. 14, 2003); *Harjoe v. Colonial Life & Accident Ins. Co.*, No. 02 CC-1983, at 3 (Mo. Cir. Ct. Aug. 29, 2002).

Plaintiff argues that the information contained in the Faxes is stale information, because "there had been no [UnitedHealthcare] commercial line Levaquin tier changes from 2007 to 2008." Pl.'s Opp. Br. at 20 (citing Matkie Dep. 36:3–7, 43:2–6).

Defendants counter that even though there were no commercial line changes, Levaquin's status changed with respect to several Medicare plans. Matckie Decl. ¶¶ 12, 13. Specifically, in 2007, "approximately 81% of UnitedHealthcare's Medicare members had access to Levaquin in the Tier 2 position while about 19% had access to it in Tier 3 . . . . UnitedHealthcare made formulary status changes for six . . . of its Medicare plans for the 2008 program year. After those changes became effective, Levaquin was a Tier 2 drug for almost 100% of the  company's Medicare members." *Id.*; *see also* Owen Decl. ¶ 20 ("The Faxes are a direct result of Levaquin's newly released reimbursement status on the UnitedHealthcare prescription drug list and the 2008 Amendment."). Defendants also argue that "in or around March 2008, Levaquin moved from Tier 3 to Tier 2 on the commerical formularies for two companies that UnitedHealth Group had previously acquired, Pacificare Health Systems ["Pacificare"] and UnitedHealthcare Servies Company of the River Valley, Inc. ["United Healthcare River Valley"]" Defs.' Br. at 18.

However, Plaintiffs contend that "the fax addresses commercial lines of UHC plans and does not address Medicare plans." Pl.'s Opp. Br. at 18. Further, Plaintiffs argue that Pacificare and United Healthcare River Valley operated under different names and that the Faxes were not sent to the regions in which Pacificare and UnitedHealthcare River Valley operated. Pl.'s Stmt. of Facts ¶¶ 41–47.[6]

---

[6] There is a dispute of fact as to whether the Faxes were sent to regions in which Pacificare and United Healthcare River Valley operate. The Pacificare network is apparently limited to California, Oregon, Washington and Nevada, and it is unclear whether Oregon, for example, was included in the Rocky Mountain region, one of the regions in which the Faxes were transmitted. Similarly, the River Valley / John Deere Plan apparently operates in Iowa, Central and Western

The issue of whether the Faxes contained stale information is a material contextual factor in determining whether the Faxes were informational or advertising, because if the Faxes did not contain new information, a reasonable factfinder could conclude that the Faxes were materials "advertising the commercial availability" of Levaquin. 47 U.S.C. § 227(b)(1)(C). And, the record reveals a genuine dispute of fact, as Defendants point to evidence in support of their argument that the Faxes contained new information and Plaintiffs point to competing evidence to argue the opposite. Therefore, the Court finds that there is a genuine dispute of material fact as to whether the Faxes indeed contained new information for the fax recipients and, thus, whether the timing of the Faxes indicates an advertising intent.[7]

### c.  Whether the Faxes were Part of Defendants' Overall Marketing Campaign

Second, there is a genuine issue of disputed fact as to whether the Faxes' transmittal was part of Defendants' overall campaign to increase Levaquin's market share, another material contextual

---

Illinois, Tennessee and Southwest Virginia, and it is unclear whether Central and Western Illinois, for example, were included in the Chesapeake or Rocky Mountain regions, two of the regions in which the Faxes were transmitted. Pl.'s Stmt. of Facts ¶¶ 41–47; Defs.' Response to Pl.'s Stmt. of facts 41–47.

[7] Defendants argue that "[t]he TCPA does not provide that a fax can be informational only if it relays 'breaking news' . . . [, n]or is it essential that a tier change has occurred in order for the Faxes to provide updated information to healthcare providers. Even if the Faxes did not provide updated information to providers . . . they are still, on their face, straightforward informational communications." Defs.' Br. at 8. In support of the proposition that a fax does not need to contain "breaking news" to be considered informational, Defendants cite to *Holmes v. Back Doctors, Ltd.*, No. CIV.NO.09-540-GPM, 2009 WL 3425961, at *2 (S.D. Ill. Oct. 21, 2009) *vacated in part on other grounds*, 695 F. Supp. 2d 843 (S.D. Ill. 2010), in which the defendant Back Doctors, Ltd. "made it a practice to send to lawyers and other interested persons informational faxes concerning the care and treatment of various medical disorders" and the district court found such faxes to be informational. *Id.* In *Holmes*, the district court found, in relevant part, that "the faxes contain bona fide medical information of interest to personal injury lawyers . . . ." *Id.* at *4.

However, though the issue of whether the Faxes contained new information may not be *dispositive* of whether the Faxes were informational or amounted to advertising, I nevertheless find, under these facts, that this issue is a relevant factor to the analysis.

indicator of advertising intent. Plaintiff points to the timing of Defendant Janssen's marketing plan in early 2008, which identified "Key National Opportunity" regions and "Pull Through Targets" to maintain and/or increase Levaquin market share. Pl.'s Stmt. of Facts ¶ 17; Defs.' Response to Pl.'s Stmt. of Facts ¶ 17. The fact that Defendants sent the Faxes to a list of regions that is identical to a list of Defendants' "Pull Through Target" regions is, Plaintiff argues, indicative of Defendants' commercial intent. *See* Pl.'s Stmt. of Facts ¶ 21. So too, it argues, is the undisputed fact that Defendant Janssen's Marketing Deparment created and sent the fax. *Id.* ¶ 16. Defendant does not directly respond to the first argument and, as to the second argument, responds that whether the Marketing Department sent the fax is irrelevant to the determination of whether the fax was informational or advertising. *See* Defs.' Reply Br. at 4–5.

The Cout agrees with Plaintiff that the similarity between the "Pull Through Target" lists and the geographic list of the Faxes' receipients, as well as the Marketing Department's involvement in creating and sending the Faxes, if true, raise the inference that Defendants intended to advertise Levaquin through the Faxes. Thus, a reasonable fact-finder could conclude that the Faxes were part of Defendants' overall marketing campaign, which would weigh in favor of finding that the Faxes amounted to advertising under the TCPA.[8] *Drug Reform Coordination Network, Inc.*, 2015 WL 2404695, at *4.

---

[8] Finally, the parties also dispute whether the relevance of the information contained in the Faxes weighs in favor of or against finding the Faxes to be advertising under the TCPA. Defendants argue that the Faxes "provided critical information to help physicians make informed health care decisions." Defs.' Br. at 8. Defendants submit general evidence that "the extent of insurance coverage and the amount of a patient's co-payment affects the likelihood that a patient will follow a physician's instructions and obtain prescribed medicines" and that "[m]edical researchers have therefore urged fellow physicians to 'educate ourselves about medication costs' so that 'we can discuss them with our patients' and consider them when developing treatment plans. Defs.' Stmt. of Facts ¶¶ 6,7 (citing to various medical journal and circular articles); *see also* Owen Certif. ¶ 11 ("Informational communications, such as the Faxes, are critical in keeping healthcare providers up-to-date on the most current reimbursement status for widely prescribed

Therefore, because there are genuine issues of material fact regarding whether the faxes constitue unsolicited advertising under the TCPA, the Court denies summary judgment in favor of Defendants.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied. An appropriate order shall follow.


Dated: June 19, 2015                                         /s/ Freda L. Wolfson
                                                            United States District Judge

---

medications such as Levaquin."). Further, it is undisputed that "[i]n early 2008, the difference betwen Tier 2 and Tier 3 medications was between fifteen and twenty dollars per patient co-pay." Defs.' Stmt. of Facts ¶ 8; Owen Decl. ¶ 10.

It appears from Plaintiff's briefing that Plaintiff has abandoned its allegation in its Amended Complaint that "[a]ny insurance reimbursement information was not directly relevant to any fax recipients." Am. Compl. Rather, Plaintiff argues instead that the insurance reimbursement information contained in the Faxes constitute advertising *because* such information is relevant to a particular physician's decision regarding whether to prescribe a drug like Levaquin. Pl.'s Stmt. of Facts ¶¶ 32–38; Pl.'s Opp. Br. at 13–15. Plaintiff cites to evidence that pricing data is one of several factors that a physician considers in making her decision about which medication to prescribe to a patient. Pl.'s Stmt. of Fact ¶ 32; Defs.' Response to Pl.'s Stmt. of Fact ¶ 32.

Therefore, it appears that both parties are now in agreement that the Faxes contained information that is relevant to their recipients. However, the parties disagree about the significance of the Faxes' relevance. I find this to be another issue of disputed fact that is material to the determination of whether the Faxes are unsolicited advertising, further precluding summary judgment for Defendants.

ATTACHMENT A: APRIL 2008 FAX

To: JOSE O MARTINEZ MD     From: Alert Marketing Inc, 866-791-6049     04/08/2008   16:10

Sent on behalf of Ortho-McNeil-Janssen Pharmaceuticals, Inc.

## IMPORTANT REIMBURSEMENT INFORMATION



# Available on
# UnitedHealthcare PDL
# Tier 2*

APR 0 8 2008

\* Tier 2 Drugs: Brand name drugs that are generally covered at lower co-payments than Tier 3 brand name drugs.
(Tier 1 drugs are generally generic drugs and have the lowest co-payments.)

The information provided is not a guarantee of coverage or payment (partial or full). Actual benefits are determined by the plan administrator in accordance with its policies and procedures.

For information on LEVAQUIN, please contact Customer Communications Center at 1-800-526-7736 (9 a.m.–5 p.m. ET).

PLEASE SEE FULL PRESCRIBING INFORMATION AVAILABLE FROM YOUR REPRESENTATIVE.

If you do not wish to receive any more faxes from /alert Marketing Inc., please call 866-858-2914 (toll free) and enter your fax number followed by the # sign, or return this fax to 866-791-6049 and write clearly on the fax, "Please remove this fax number" AND the fax number you wish to have removed, or visit http://kmsconnect.us/removemyfax/ and your fax number will be placed on our "Do Not Fax" List. Failure to comply with your request within 30 days is unlawful.

PriCara

© Ortho-McNeil-Janssen Pharmaceuticals, Inc. 2008          April 2008     02PRMC3337X     Daiichi-Sankyo   Together Rx Access and the Together Rx Access logo are trademarks of Together Rx Access, LLC.

## ATTACHMENT B: MAY 2008 FAX

To:  JOSE O MARTINEZ MD        From: Alert Marketing Inc, 866-791-6049        05/06/2008 2:42 PM

Sent on behalf of Ortho-McNeil-Janssen Pharmaceuticals, Inc.

# IMPORTANT REIMBURSEMENT INFORMATION



Lēvaquin®
(levofloxacin) Tablets/Injection
(levofloxacin in 5% dextrose) Injection

# Available on
# UnitedHealthcare PDL
# Tier 2*

MAY 0 6 2008

\* Tier 2 Drugs: Brand name drugs that are generally covered at lower co-payments than Tier 3 brand name drugs.
  (Tier 1 drugs are generally generic drugs and have the lowest co-payments.)

The information provided is not a guarantee of coverage or payment (partial or full). Actual benefits are determined by the plan administrator in accordance with its policies and procedures.

For information on LEVAQUIN, please contact Customer Communications Center at 1-800-526-7736 (9 a.m.–5 p.m. ET).

PLEASE SEE FULL PRESCRIBING INFORMATION AVAILABLE FROM YOUR REPRESENTATIVE.

If you do not wish to receive any more faxes from /alert Marketing Inc., please call 866-858-2914 (toll free) and enter your fax number followed by the # sign, or return this fax to 866-791-6049 and write clearly on the fax, "Please remove this fax number" AND the fax number you wish to have removed, or visit http://xmsconnect.us/removemyfax/ and your fax number will be placed on our "Do Not Fax" List. Failure to comply with your request within 30 days is unlawful.

PriCara.

© Ortho-McNeil-Janssen Pharmaceuticals, Inc. 2008



Daiichi-Sankyo

April 2008        02PIMC332X

Together Rx Access and the Together Rx Access logo are trademarks of Together Rx Access, LLC.

14