*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, Inc., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>                                    Plaintiff,<br><br>        v.<br><br>JANSSEN PHARMACEUTICALS, INC., ALERT MARKETING, INC., ORTHO-MCNEIL PHARMACEUTICAL, LLC., ORTHO-MCNEIL, INC.,<br><br>                                    Defendants. | Civ. No 12-2132 (FLW-TJB)<br>OPINION |

**WOLFSON, U.S. DISTRICT JUDGE:**

This matter comes before the Court on a motion for reconsideration filed Defendants Janssen Pharmaceuticals, Inc., Alert Marketing, Inc., Ortho-McNeil Pharmaceutical, LLC. ("Janssen"),[1] and Ortho-McNeil, Inc. (collectively, "Defendants"). Defendants seek reconsideration of the Court's June 19, 2015 decision denying summary judgment in favor of Defendants on claims filed by Plaintiff Physicians Healthsource, Inc. ("Plaintiff"), under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. In the alternative, Defendants seek that the decision be certified for interlocutory appeal.

---

[1] Plaintiff filed this action against Ortho-McNeil Pharmaceutical, Inc. Defendants' briefs and exhibits provide potentially conflicting information about whether Plaintiff correctly identified the entity. Defendants state in their moving brief that Ortho-McNeil Pharmaceutical LLC was misidentified as Ortho-McNeil-Pharmaceutical, Inc. Defs.' Br. n.1. However, one of the certifications submitted in support of Defendants' motion states that Ortho-McNeil-Janssen Pharmaceuticals, Inc. is now known as Janssen Pharmaceuticals, Inc. Owen Certif. 1 n.1.

1

For the reasons that follow, Defendants' motion is denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The Court will not belabor the facts, which are familiar to the parties. A more detailed recitation of the underlying dispute may instead be found in the Court's June 19, 2015 Opinion. For the purposes of the present Motion for Reconsideration, it suffices to note that Plaintiff received two faxes of identical content in the spring of 2008, sent by Janssen's marketing department, which stated in relevant part that Levanquin is "Available on UnitedHealthcare PDL [prescription drug list] Tier 2."

On April 5, 2012, Plaintiff filed this lawsuit, alleging that the two faxes in question constituted unsolicited advertising in violation of the TCPA. On January 31, 2013, this Court granted Defendants' motion to dismiss and, thereafter, supplemented its opinion on the motion. In my ruling on the motion to dismiss, I found, as a matter of law, that the content of the Faxes did not constitute advertising under the TCPA. *Physicians Healthsource Inc. v. Janssen Pharm., Inc.*, Civ. No. 12-2132 FLW, 2013 WL 486207, at *5 (D.N.J. Feb. 6, 2013).

Thereafter, Plaintiff filed a motion for reconsideration and a motion to amend. I denied Plaintiff's motion for reconsideration. However, I granted Plaintiff's motion to amend, though not in the form of the proposed amended complaint. *Physicians Healthsource, Inc. v. Janssen Pharm.*, Inc., Civ. No. 12–2132 FLW, 2013 WL 2460345, at *3 (D.N.J. June 6, 2013). On June 26, 2013, Plaintiff filed an Amended Complaint. Thereafter, Defendants moved for summary judgment.[2]

---

[2] On December 18, 2014, Defendants moved for summary judgment on Plaintiff's Amended Complaint. On April 2, 2014, the Court denied Defendants' motion without prejudice as premature, because Plaintiff did not have an adequate opportunity to take discovery. After the parties engaged in discovery, Defendants renewed their motion for summary judgment.

In my July 19, 2015 decision on Defendants' motion for summary judgment, I began by clarifying that:

> I will not revisit my analysis in my earlier opinion regarding the content of the Faxes. However, to the extent that Plaintiff provides evidence and arguments that the timing and the relevance of the transmittals support a finding that the Faxes constitute advertising due to the context of the transmittals-as opposed to their contents-I will consider such evidence and arguments on this summary judgment motion.

*Physicians Healthsource*, 2015 WL 3827579, at *4. I then noted

> as a threshold matter that the jurisprudence regarding whether a Court should indeed look beyond the four corners of a fax's contents and examine other potentially relevant facts in its determination as to whether a particular fax indeed constitutes an advertisement is still developing and the Third Circuit has yet to decide the issue. However, recent court decisions discussing the issue have come out against putting on "evidentiary blinders in deciding whether a particular fax amounts to an advertisement." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015); *see also, e.g.*, *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, No. 1:14–CV–00701 (APM), 2015 WL 2404695, at *4 (D.D.C. May 11, 2015).

*Physicians Healthsource*, 2015 WL 3827579, at *4. I went on to find "this reasoning persuasive, particularly in light of the FCC's reasoning in classifying faxes that notify recipients of free goods and services as advertising, in part because 'free' publications are usually part of an overall marketing campaign, a fact that is not necessarily evident from the four corners of a fax itself." *Id.* Therefore, I found it "useful, within the spirit of the TCPA, and sufficiently supported by the case law to consider factors beyond the scope of a fax's contents in discerning whether there is an advertising intent behind the transmittal of a fax such that would classify the fax as 'unsolicited advertising' under the TCPA." *Id.*

In thus examining Plaintiff's argument that the circumstances surrounding the transmittal of the Faxes transform the Faxes into advertising as defined under the TCPA, I found multiple genuine issues of disputed fact that precluded entering summary judgment in favor of Defendants. *Id.* at *5. Those genuine issue of disputed fact are as follows: whether (1) "the timing of the Faxes

indicates that the Faxes were not informational because they contained no new information," *id.*; (2) whether the Faxes' transmittals were part of Defendants' overall campaign to increase Levaquin's market share, another material contextual indicator of advertising intent, *id.* at *6; and (3) whether the pricing information contained in the Faxes constitutes advertising because a physician is more likely to prescribe a lower-priced medication. *Id.* at *6 n.8. Accordingly, I denied Defendants' motion for summary judgment. *Id.*

On July 6, 2015, Defendants filed the instant motion. Defendants seek reconsideration in light of the Sixth Circuit's decision in *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015), handed down days before this Court's decision. Defendants "ask the Court to reconsider its decision on summary judgment, apply the standard adopted by the Sixth Circuit, and enter judgment in Defendants' favor." Defs.' Br. at 3. In the alternative, Defendants "request that the Court certify its Order of June 19, 2015 under 28 U.S.C. § 1292(b) for immediate interlocutory appeal." *Id.* Plaintiff opposes both motions.

## II.  Standard of Review

### a.  *Motion for Reconsideration*

Local Civil Rule 7.1(i) governs motions for reconsideration and requires the moving party to "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). The burden on the moving party is quite high and reconsideration is granted very sparingly. To prevail on such a motion, the movant must demonstrate either: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010).

4

Notably, a motion seeking reconsideration may not be used by a party to "restate arguments that the court has already considered." *Lawrence v. Emigrant Mortg. Co.,* Civ. No. 11–3569, 2012 WL 5199228, *2 (D.N.J. Oct. 18, 2012). Nor may be such a motion be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc. v. Comm. Union Ins. Co.,* 935 F.Supp. 513, 516 (D.N.J. 1996). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.,* 16 F.Supp.2d 511, 532 (D.N.J. 1998) (internal citation omitted). Further, where a party merely has a difference of opinion with the court's decision, the issue should be raised through the normal appellate process; reconsideration is not the appropriate vehicle. *Dubler v. Hangsterfer's Laboratories,* Civ. No. 09–5144, 2012 WL 1332569, *2 (D.N.J. Apr. 17, 2012) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n,* 130 F.Supp.2d 610, 612 (D.N.J. 2001)).

    *b.  Interlocutory Appeals*

Section 1292(b) provides that interlocutory appeals from orders can only be granted when three requirements are met: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; (3) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). The party moving for certification of the appeal bears the burden of proof in establishing that Section 1292's requirements are satisfied. *See, e.g.*, *Meyers v. Heffernan*, No. CIV.A. 12-2434 MLC, 2014 WL 7336792, at *3 (D.N.J. Dec. 22, 2014). However, the decision to certify an interlocutory appeal "is wholly within the discretion of the courts," even if all three statutory elements are met. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (citation omitted). Strong policy against

piecemeal litigation requires that motions for interlocutory appeals should be granted "sparingly." *Kapossy v. McGraw–Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996).

In evaluating these elements, "the court must remember that ... [a] motion should not be granted merely because a party disagrees with the [previous] ruling." *Id.* A "difference of opinion" must arise out of a genuine issue as to the correct legal standard. *Id.* A question is "controlling" if the incorrect disposition would necessitate a reversal of the final judgment. *Id.*

## III. Discussion

The Court will first resolve Defendants' motion for reconsideration before turning to their request for certification of an interlocutory appeal.

### a. Motion for Reconsideration

Defendants argue that the Sixth Circuit's recent decision in *Sandusky* warrants reconsideration of this Court's denial of summary judgment. As a threshold matter, Defendants do not identify upon which of the three bases for reconsideration this argument rests. *See* Defs.' Br; Defs.' Reply Br. Therefore, out of an abundance of caution, this Court will consider Defendants' arguments under each of the enumerated bases for reconsideration.

#### 1. Intervening Change in the Controlling Law

To the extent that Defendants hold up the Sixth Circuit's decision to be an intervening change in the controlling law, such an argument fails. The Sixth's Circuit's decision does not constitute an intervening change in the controlling law for multiple reasons. First, Sixth Circuit law does not control this Court. *See Capaz-Rodrigues v. Attorney Gen. of U.S.*, 586 Fed. App'x 88, 93 (3d Cir. 2014); *see also, e.g.*, *D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*, No. CIV. A. 03-1026 MLC, 2009 WL 904054, at *2 (D.N.J. Mar. 31, 2009); *cf. Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002). Second, *Sandusky* does not

constitute an intervening opinion, as it was issued on June 3, 2015, before this Court's June 19, 2015 opinion. *See, e.g.*, *Marracco v. Kuder*, No. 08–713, 2009 WL 235469, at *4 (D.N.J. Jan.30, 2009).

Third, this Court does not read *Sandusky* to be a "change" in the law regarding the definition of a fax containing advertising under the TCPA. Defendants interpret *Sandusky* as changing the law regarding whether it is permissible to go beyond the "four corners" of a fax to determine whether the fax constitutes advertising. However, *Sandusky* does not hold that it is impermissible to do so. Rather, in *Sandusky*, the Sixth Circuit merely concluded that the TCPA "unambiguously defines advertisements as having commercial components, and that [the] faxes [at issue] lack those components." *Sandusky*, 788 F.3d at 223. In fact, the Sixth Circuit specifically went beyond the four corners of the faxes at issue in that case by noting that those faxes

> call items (medications) and services ([the defendants's] formulary) to [the plaintiff's] attention, yes. But no record evidence shows that they do so because the drugs or [the defendant's] services are for sale by [the defendant], now or in the future. In fact, the record shows that [the defendant] has no interest whatsoever in soliciting business from [the plaintiff]. And no record evidence shows that the faxes promote the drugs or services in a commercial sense—they're not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or the others similarly situated. See id. Nor does any record evidence show that [the defendant] hopes to attract clients or customers by sending the faxes. The record instead shows that the faxes list the drugs in a purely informational, non-pecuniary sense: to inform [the plaintiff] what drugs its patients might prefer, based on [the defendant's] formulary—a paid service already rendered not to [the plaintiff] but to [the defendant's] clients.

*Id.* at 222 (internal citations to the record omitted). Further, the Sixth Circuit went on to state that "[t]o be sure, a fax need not be an explicit sale offer to be an ad. It's possible for an ad to promote a product or service that's for sale without being so overt . . . . The best ads sometimes do just that. But the fax itself must at least be an indirect commercial solicitation, or pretext for a commercial solicitation." *Id.* at 225. Indeed, it would be impossible to ascertain a fax's commercial pretext without going beyond the pure content of the fax.

7

Defendants rely on language in the *Sandusky* opinion in which the Sixth Circuit rejected the plaintiff's invitation to employ a "quasi-substantial effects" test to determine whether the faxes were advertisements. While the Sixth Circuit indeed stated it rejected such a test, *id.* at 225, it did not specifically define that test as going beyond the four corners of a fax.[3] Rather, the Sixth Circuit declined to rely on "[t]he fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on" based upon the argument that the sender "might financially benefit from these faxes several locks down the stream of commerce (conceivably through one of its illegal schemes)." *Id.* Here, the facts are clearly distinguishable, because Defendants are the manufacturers of the drug about which they sent faxes to Plaintiff; therefore, Defendants would *directly* profit from Plaintiff's doctors prescribing Levanquin.

Defendants further rely on the Sixth Circuit's decision to affirm the district court's denial of the plaintiff's request to conduct discovery that "would show [the defendant's] pecuniary interest in the nine prescription drugs touted in the ads; [the defendant's] advertising practices; and the specific circumstances that led to the ads." *Id.* at 225 (internal quotation marks omitted). The Sixth Circuit affirmed the district court's denial in part because the court deemed "[t]he possibility that future economic benefits will flow from a non-commercial fax, ancillary to the content of the fax [to be] legally irrelevant to determining whether the fax is an ad." *Id.* However, as stated above, the facts in *Sandusky* are distinguishable from those here; in the case at bar, Defendants would directly profit from selling the prescription drug (Levanquin) touted in their faxes. Therefore, any discovery on Defendants' profit motive would not go to the mere *possibility* of future economic

---

[3] Further, as quoted *supra*, the Sixth Circuit indeed went beyond the four corners of the faxes at issue in *Sandusky* to arrive at its conclusion.

benefits flowing from the faxes at issue in this case; the future economic benefits here are concrete, not theoretical.

For all of these reasons, *Sandusky* does not represent an intervening change in the controlling law such that would warrant reconsideration.[4]

### 2. New Evidence

Defendants do not identify any new evidence that has come to light such that would warrant reconsideration of this Court's summary judgment decision. *See* Defs.' Br. Accordingly, reconsideration is denied under this basis.

### 3. Clear Error or Manifest Injustice

Defendants state in their brief that "any reading of the TCPA that threatens to convert informational faxes into prohibited 'advertisement'—regardless of the contents of the fax itself, based solely upon the sender's motives, or the possibility that the sender might receive some financial benefit---would impose an illogical and potentially dangerous chilling effect on the dissemination of important medical information to health care providers. Indeed, such a broad reading of the statute would likely render the TCPA unconstitutional as applied to informational

---

[4] Defendants also argue that in light of the Sixth Circuit's opinion in *Sandusky*, the Western District of Michigan's decision in *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015), which this Court cited with approval in its June 19, 2015 opinion, "is no longer good law." However, this Court disagrees with Defendants' position. As Plaintiff points out, the Sixth Circuit cites *Stryker* with approval as providing an example for when a fax "probably" is an advertisement "when an orthopedic-implant manufacturer sends potential buyers a fax containing a picture of its product on an invitation to a free seminar: It is drawing the relevant market's attention to its product to promote its sale (albeit indirectly)." *Sandusky*, 788 F.3d 218, 222 (6th Cir. 2015). And, as stated *supra*, I do not find that *Sandusky* explicitly disagrees with the proposition advanced in *Stryker* "that the TCPA's text does not require a court to put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement. The ultimate statutory question is whether the fax at issue falls within the statutory definition." *Stryker*, 65 F. Supp. 3d at 492. Moreover, this Court relied on *Stryker* for its reasoning, not for its precedential value.

9

communications like those at issue here." Defs.' Br. at 3. To the extent Defendant argues this point in favor of reconsideration on the basis of clear error or manifest injustice, Plaintiff counters that Defendants did not raise the argument in their summary judgment briefing. The Court agrees,[5] and denies reconsideration on this basis. *See, e.g.*, *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F.Supp.2d 141, 168 (D.N.J. 2013) ("The motion [for reconsideration] is not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment.").

Therefore, Defendants' motion for reconsideration is denied.

### b. *Interlocutory Appeal*

I now turn to Defendants' motion in the alternative, for certification of an interlocutory appeal. I will analyze Defendants' arguments to determine if they have sustained their burden in establishing whether (1) this Court's June 19, 2015 order (1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; (3) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

---

[5] Defendants argue in their reply brief that "[t]he constitutional limits on subjecting informational communications to chilling and draconian penalties are inherently involved in construing the TCPA 'advertising' limitation, and these limits have been repeatedly raised by Defendants in this case, both on the summary judgment motion and on the closely related prior motion to dismiss as well as their answers." Defs.' Reply Br. at 4 n.1. However, the Court does not consider arguments made in prior motions that have not been renewed in a party's subsequent motions. And the lone constitutional argument Defendants made in their summary judgment briefing was a passing reference that "Plaintiff's jabs at Janssen's profit-making objective are . . . irrelevant," because "[a] profit motive does not deprive a company of the protections that the law affords to informational communications." Pl.'s Reply Br. in Support of Mot. for Summ. Judgmt. at 6 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964)). Defendants never specifically argued on summary judgment that First Amendment concerns may be triggered by reading the TCPA to authorize going beyond the four corners of a fax to discern an advertising intent. *See* Defs.' Br. in Support of Mot. for Summ. Judgmt., Reply Br. in Support of Mot. for Summ. Judgmt.

First, as Plaintiff notes, Defendants do not present a specific question to certify for interlocutory appeal, either in their moving brief, their reply brief, or in their proposed order. However, it appears from their briefing that they wish for some variation of the following issue be certified for appeal: whether a district court may go beyond the "four corners" of a fax to determine whether the fax constitutes advertising under the TCPA. This Court accepts that this question is a controlling one; as I stated in my February 2013 opinion on Defendants' motion to dismiss, I found the pure content of the faxes at issue here to be informational and, thus, not advertising under the TCPA. *See, Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (defining a controlling question of law under Section 1292(b) as encompassing 'at the very least every order which, if erroneous, would be reversible error on final appeal"). Therefore, Section 1292(b)'s first prong is satisfied.

Further, Defendants have also established Section 1292(b)'s third prong, that an immediate appeal may materially advance the ultimate termination of litigation. If the Third Circuit were to grant Defendants' appeal, Defendants would not have to advance to the trial stage of the litigation. *See, e.g.*, *Meyers v. Heffernan*, Civ. No. 12-2434 MLC, 2014 WL 7336792, at *4 (D.N.J. Dec. 22, 2014 ("A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive.").

However, I find that Defendants have not met their burden in proving Section 1292(b)'s second prong: that this question is one in which there is substantial grounds for difference of opinion. Defendants correctly note that I stated in my June 19, 2015 opinion that "the jurisprudence regarding whether a Court should indeed look beyond the four corners of a fax's contents and examine other potentially relevant facts in its determination as to whether a particular fax indeed

constitutes an advertisement is still developing[,] and the Third Circuit has yet to decide the issue." *Physicians Healthsource*, 2015 WL 3827579, at *4. However, none of the cases Defendants cite in their motion expressly hold that it is impermissible to go beyond the four corners of a fax to determine whether it constitutes advertising under the TCPA.

As stated *supra*, I find that the Sixth Circuit's opinion in *Sandusky*, cited at length in Defendants' briefing, does not hold as such and, indeed, goes beyond the four corners of the faxes at issue in that case in order to reach a decision. In a footnote, Defendants cite to three more cases; however, none of those cases expressly hold as such, either. In *Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*, 222 Fed. App'x 530, 531 (8th Cir. 2007), the Eighth Circuit affirmed the district court's dismissal of a complaint brought under the TCPA because it "agree[d] with the district court that [the plaintiff] failed to state a claim upon which relief could be granted because the facsimile attached to the complaint does not constitute an 'unsolicited advertisement' pursuant to the TCPA." *Id.* at 531. However, in *Ameriguard*, the Eighth Circuit did not address the issue of whether it is permissible to go beyond the four corners of a fax to determine whether a fax is an unsolicited advertisement. *Id.* Further, the district court in that case discounted the plaintiff's contention that "the invitation for people to obtain 'information about diabetes prevention' qualifies as 'commercial availability' of Defendant's goods because (1) "the Complaint does not allege Defendant makes 'information about diabetes prevention' commercially available (as opposed to simply delivering it to people), nor does it allege Defendant sells medication directly to the public . . . . [and (2)] there is no suggestion Defendant included the call for volunteers as a smokescreen to mask a true purpose of engaging in the commercial activity of providing information or selling medicine." *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006) *aff'd*, 222

Fed. App'x 530 (8th Cir. 2007). Thus, the district court did not hold, nor did the Eighth Circuit affirm, that it was constrained from looking beyond the four corners of the fax to determine whether it was indeed advertising; rather, the district court merely found that the plaintiff's complaint insufficiently alleged any facts that would have transformed fax into an advertisement.

Next, Defendants cite *Physicians HealthSource, Inc. v. Multiplan Servs. Corp.*, No. 12-11693, 2013 WL 5299134, *2 (D. Mass. Sept. 18, 2013). Similar to *Ameriguard* in both procedural posture and outcome, the district court did not hold that it was not permitted to go beyond the four corners of the fax to determine whether it constituted an advertisement under the TCPA. *See id.* Rather, the district court merely found, at the motion to dismiss stage of the litigation, that "[b]eyond the plaintiff's conclusory allegation that the facsimile in question was an unsolicited advertisement, there are no facts to support that the facsimile was anything other than a transactional communication sent pursuant to an existing business relationship between" the plaintiff and the defendant. *Id.* at *2.

Finally, Defendants cite *Holmes v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843 (S.D. Ill. 2010). In *Holmes*, the procedural posture differed in that the district court was deciding a motion for reconsideration, pursuant to Rule 59(e). The district court denied reconsideration on the basis of newly-discovered evidence because, "[l]ooking at the four corners of the faxes sent by Back Doctors to Holmes and acknowledging that in fact they do manifest to some extent a commercial purpose, the Court nonetheless reaffirms its earlier determination that the faxes are proper under the Commission's regulations promulgated pursuant to the TCPA." *Id.* at 851. However, again, the district court did not hold that it was impermissible to go beyond the four corners of the fax in question; rather, the district court noted that on the motion for summary judgment, it "acknowledged the advertising component of [the defendants'] faxes, but found also that the faxes

13

carefully complied with Commission regulations concerning informational faxes. It is clear that in [the plaintiff's] view a fax containing any advertising content should be treated as an advertisement, but this is not consistent with the Commission's regulations, which authorize informational faxes to contain incidental advertising." *Id.*

In sum, none of the cases on which Defendants rely contradict, or employ a substantially different approach from, the circumstantial approach adopted by this Court in evaluating whether a fax constitutes advertising.[6] Therefore, Defendants do not convincingly demonstrate substantial grounds for difference in opinion on this issue. *See Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J. 1993) (describing a "substantial ground for difference of opinion" as "whether other courts have substantially differed in applying that standard"); *Knopick v. Downey*, 963 F.Supp.2d 378, 398 (M.D. Pa. 2013) (finding "'substantial grounds for difference of opinion' . . . where there are conflicting interpretations from numerous courts") (internal citation and quotation marks omitted); *see also, e.g.*, *Sabree v. Williams*, No. CIV.A. 06-2164, 2008 WL 4534073, at *2 (D.N.J. Oct. 2, 2008). Accordingly, I find that Defendants do not meet their burden as to the second element of the Section 1292(b) analysis. *See Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1004 (D.N.J. 1996).

---

[6] As stated in my June 19, 2015 opinion, multiple recent decisions have embraced going beyond the four corners of a fax in evaluating whether the fax constitutes advertising under the TCPA. *See, e.g.*, *Stryker*, 65 F. Supp. 3d 482; *see also, e.g.*, *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, No. 1:14–CV–00701 (APM), 2015 WL 2404695, at *4 (D.D.C. May 11, 2015) (examining both the timing and the content of an advertisement in denying a motion to dismiss a TCPA junk fax claim); *Eden Day Spa, Inc. v. Loskove*, No. 14-81340-CIV, 2015 WL 1649967, at *3 (S.D. Fla. Apr. 14, 2015) (finding that "conducting an analysis as to whether the fax was part of an overall marketing campaign, and therefore is an advertisement, will require an inquiry that goes beyond the four corners of the Complaint" and denying the defendant's motion to dismiss accordingly). Further, this approach accords with "the FCC's reasoning in classifying faxes that notify recipients of free goods and services as advertising, in part because 'free' publications are usually part of an overall marketing campaign, a fact that is not necessarily evident from the four corners of a fax itself." *Physicians Healthsource, Inc.*, 2015 WL 3827579, at *4.

Further, even if all three statutory requirements were met, Defendants also fail to demonstrate any special circumstances that would warrant the exercise of this Court's discretion in making an exception to the general policy against piecemeal litigation. *See U.S. v. Nixon*, 418 U.S. 683, 690 (1974); *see also, e.g.*, *Forman v. Willix*, No. CIV.A. 13-5291 CCC, 2014 WL 1877628, at *4 (D.N.J. Apr. 30, 2014). Thus, Defendants' motion for certification of an interlocutory appeal is denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration is denied. Defendants' motion in the alternative for certification of an interlocutory appeal is also denied. An appropriate order shall follow.

Dated: September 2, 2015                /s The Honorable Freda L. Wolfson
                                              United States District Judge